UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  09-60713-CIV-ALTONAGA/Brown

**ANAGO FRANCHISING, INC.**,

      Plaintiff,

vs.

**CHMI, INC.**, *et al.*,

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff's Renewed Motion for Preliminary Injunction ("Renewed Motion") [D.E. 67], filed September 14, 2009. The Court has carefully reviewed the parties' written submissions and applicable law.

## I.  BACKGROUND

### A.  Plaintiff's Allegations[1]

Plaintiff, Anago Franchising, Inc.'s ("Anago['s]") Amended Verified Complaint for Injunctive Relief and for Damages [D.E. 64] alleges Anago is a Florida corporation, and Defendant, CHMI, Inc. ("CHMI"), is an Arizona corporation. (*See Amended Verified Complaint for Injunctive Relief and for Damages* ("*Am. Compl.*") ¶¶ 5,6). Defendants, Raymond Michael Derryberry and Cheri Derryberry (the "Derryberrys"), have consented to the Court's jurisdiction. (*See id.* ¶ 7).

Anago is the franchisor of commercial cleaning subfranchises to individuals and businesses. (*See id.* ¶ 8). It employs proprietary products, services, methodologies, and distinctive symbols as

---

[1] This background is taken from the Court's Order [D.E. 79] granting in part and denying in part Defendants' Motion to Dismiss Plaintiff's Amended Verified Complaint for Injunctive Relief and for Damages, entered on October 9, 2009.

CASE NO.  09-60713-CIV-ALTONAGA/Brown

trademarks and service marks (the "marks") that identify the franchised businesses and services provided by Anago as its franchise system. (*See id.*).  Anago obtained a federal registration of its mark from the United States Patent and Trademark Office, and the registration is for "rendering technical assistance in the establishment and operation of commercial cleaning businesses." (*See id.* ¶ 9).

On June 24, 2004, Anago entered into a Subfranchise Rights Agreement ("SRA") with Defendants for the operation of an Anago Master Franchise (subfranchise) in Arizona. (*See id.* ¶ 10).  The SRA consists of an integrated and cross-referenced set of documents. (*See id.*).  The Derryberrys signed the SRA in their individual capacity, with no corporate reference. (*See id.* ¶ 11).

Under the SRA, Anago provided its franchise system, including its marks, expertise and training in the operation of a commercial cleaning franchise business. (*See id.* ¶ 12).  Defendants were given the exclusive right to use the franchise system in a certain geographical area. (*See id.*).  The franchise system included the right to enter into agreements with unit franchisees and the right to enter into agreements to clean commercial accounts in the name Anago and utilizing the Anago system. (*See id.* ¶ 13).  Defendants agreed to terms of the SRA, and payment was secured by a Promissory Note executed on June 24, 2004. (*See id.*; *see also id.* ¶ 30).  The Promissory Note obligated the Derryberrys to pay the subfranchise fee to Anago in consideration of the subfranchise rights bestowed upon them and Defendants by virtue of the SRA. (*See id.* ¶ 14).  The Promissory Note identifies the Derryberrys as the subfranchisors, and the Note is incorporated into the SRA by reference. (*See id.*).

Part of the franchise system required to be used by the Defendants was software specifically

CASE NO.  09-60713-CIV-ALTONAGA/Brown

developed by Anago named NBDS.  (*See id.* ¶ 16).  The software is critical to the operation of the franchise, providing reporting on telemarketing efforts, new starts of commercial cleaning accounts, cancellation of commercial cleaning accounts, and overall market penetration of the subfranchisor. (*See id.*).  When it was determined that Defendants were not using the Anago proven methods to successfully grow the franchise operation, Anago sent an employee to work with the Phoenix operation to retrain them on how to develop their master franchise.  (*See id.* ¶ 17).  In January 2008, Defendants expressed their complete satisfaction and gratitude to Anago for the retraining and marketing assistance they received and continued to operate their master franchise profitably throughout 2008.  (*See id.*).

Shortly thereafter, rumors relating to another case involving Anago began to circulate among master franchisees, suggesting ways a master could subvert the system.  (*See id.* ¶ 18).  Defendants began to search for ways to exit the system while retaining the benefits and profitability of the franchised business.  (*See id.* ¶ 19).  Defendants systematically stopped paying their royalty and related fees to Anago, advised they had never prepared their required financial statements for disclosure to unit franchisees, and diverted payments into a new bank account, renaming the existing Anago business as "Compass Cleaning Solutions" ("Compass").  (*See id.*).  Defendants had already begun to provide cleaning services under Compass as early as November 2008.  (*See id.* ¶ 20).  In early 2009, Defendants redesigned their website de-emphasizing the mark and promoting themselves as an Arizona cleaning company.  (*See id.*).  Defendants also stopped billing through the NBDS software so that sales could not be monitored.  (*See id.*).

Defendants breached the SRA by failing to make payments under the Note, failing to make

CASE NO.  09-60713-CIV-ALTONAGA/Brown

payments of $400.00 per unit franchise sold, failing to use the required software, failing to deposit all client payments into the prescribed escrow account, failing to comply with federal law in the sale of their franchises by selling unit franchises without audited financials, failing to notify Anago of the payment receipt and corresponding deposit slip, operating Compass as early as November 2008, failing to report to Anago any complaints or suggestions made by the unit franchisees, and failing to provide Anago the required insurance documents.  (*See id.* ¶ 21).  To preempt action by Anago in response to those breaches, Defendants retained counsel to document a list of complaints set forth as purported defaults by Anago in February 2009.  (*See id.* ¶ 22).  Anago attempted to bring Defendants into compliance with the SRA, and put Defendants on formal notice of their breaches. (*See id.*).  Defendants stalled termination feigning a desire to stay in the Anago franchise system while at the same time engaging in efforts to subvert it.  (*See id.*).

By correspondence dated March 3, 2009, Defendants stated they would not comply with their obligations under the SRA, and that issues between the parties could only be resolved if Anago made several required changes to its relationship with CHMI, all of which amounted to releasing Defendants from the master franchise financial obligations.  (*See id.* ¶ 23).  The demands, which were unrelated to the previous claims of breach by Anago, required that the escrow account be closed so that all customer receipts would flow through the CHMI account.  (*See id.*).  Defendants also demanded that the unit franchise sales fees be discontinued, the Note relating to purchase of the master franchise be cancelled, advertising fees be waived, and the system of invoicing be changed. (*See id.*).

By these acts and omissions, Defendants materially breached the express terms of the SRA.

4

CASE NO.  09-60713-CIV-ALTONAGA/Brown

(*See id.* ¶ 24).  Pursuant to section 8.3 of the SRA, all rights under the SRA were automatically terminated, and the Note was accelerated effective March 5, 2009 upon service of a Notice of Events of Default and Acceleration of Promissory Note.  (*See id.*).  The March 5, 2009 Notice also advised of a significant balance of monies owed by Defendants to Anago, and to date, Defendants have failed to pay any of the outstanding amounts due.  (*See id.* ¶ 25).

Anago sent Defendants another letter dated March 20, 2009 regarding termination of the SRA, and this letter cited section 8.3 of the SRA.  (*See id.* ¶ 26).  The March 20 letter demanded Defendants comply with post-termination obligations imposed upon them by the SRA.  (*See id.*).  On March 23, 2009, Defendants agreed the SRA had in fact been terminated.  (*See id.* ¶ 27).

Since termination, Defendants have continued to operate using the Anago franchise system, the marks, and methodologies.  (*See id.* ¶ 28).  Defendants have refused to adhere to the terms and conditions of the SRA post-term obligations.  (*See id.*).  Rather, CHMI has engaged in a course of action that is in further violation of the post-term obligations of the SRA, including coercing unit franchise and cleaning accounts to breach their Anago agreements and enter into new agreements with CHMI d/b/a Compass, continuing to use the proprietary methods of Anago in running Compass, reverse palming-off of Compass as Anago, slandering Anago in the Phoenix marketplace, and diverting Anago's security interest in CHMI's business assets.  (*See id.*).

Defendants' unfair and deceptive business practices include: (a) continuing their operation as a commercial cleaning franchisor and attempting to subvert business relationships that have been pledged as security interests under the SRA; (b) opening and operating a competing business at the same business location which was opened without Anago's knowledge and prior to notification of

CASE NO.  09-60713-CIV-ALTONAGA/Brown

a breach; (c) converting Anago unit franchisees and cleaning clients into Compass franchisees and clients; (d) holding themselves out to the general public as having the credentials of Anago Franchising, such as being based in South Florida since 1989 and having started offering commercial cleaning franchises in 1991; (e) re-directing the URL www.anagophoenix.com and www.anagophx.com to www.compassphoenix.com; (f) making false and disparaging remarks about Anago such as those alleging Anago lost a lawsuit with another subfranchisor in Utah, and that Anago then abandoned its franchisees and cleaning accounts in Utah; (g) making false and disparaging remarks that Anago is not entitled to operate in the geographical area nor is Anago qualified to provide cleaning services.  (*See id.* ¶ 29).  Anago notified Defendants it was declaring the Note payable immediately.  (*See id.* ¶ 32).  Under the Note, Defendants owe Anago $130,000.00. (*See id.* ¶ 30).

Defendants have failed to make any payments demanded in the Notice of Default and continue to operate the Anago franchise under the Compass name.  (*See id.* ¶ 33).  Under section 9.1 of the SRA, Defendants are obligated to pay all outstanding amounts upon termination, but they have made no such payment.  (*See id.* ¶ 35).  Under section 9.2, Defendants are required to have all telephone numbers transferred to Anago, but they have refused.  (*See id.* ¶ 36).  Section 9.4 requires Defendants to cease selling unit franchises, using any marketing material, holding themselves out as Anago, and providing services to unit franchises and accounts, and obligates them to take all necessary steps to disassociate themselves from the Anago system, but Defendants have refused. (*See id.* ¶ 38).

Under section 10.2 of the SRA, Defendants agreed that after termination, Defendants would

CASE NO.  09-60713-CIV-ALTONAGA/Brown

not solicit or otherwise attempt to induce any business affiliate of the franchisor to terminate a business relationship with the franchisor, but they continue to do so. (*See id.* ¶ 39).  Defendants continue to operate the Anago master franchising system with the same unit franchisees and the same cleaning accounts but under the Compass name. (*See id.* ¶ 40).  Anago unit franchisees were coerced into entering into new agreements with Compass and renouncing their Anago agreements.  (*See id.*). Section 13.2 of the SRA entitles Anago to an injunction restraining Defendants' breach without the need to prove actual damage.  (*See id.*).

The Amended Complaint states five causes of action.  Count I  – Foreclosure on the Promissory Note  – is a claim against the Derryberrys for their failure to pay the Note when due. Count II  – Breach of Contract with Injunctive Relief  – is a claim of breach against all Defendants. Defendants are alleged to have violated section 2.4 of the SRA (failing to use the proscribed method of billing and collection) which constitutes grounds for termination after notice but without the opportunity to cure under sections 8.3(b), (d), and (i); section 4.2 (failing to make royalty payments or paying franchise sales fees to Anago) which constitutes grounds for termination after notice without the opportunity to cure under sections 8.3(b), (d), and (i); sections 3.1 (a) and (d) (failing to maintain and/or provide appropriate disclosures and financial statements in conjunction with the offer and sale of franchises) which constitute grounds for termination after notice without the opportunity to cure under sections 8.3(a) and (b).  (*See id.* ¶¶ 53-55).  Defendants are alleged to have materially breached the post-term obligations of the SRA for the reasons previously described.  (*See id.* ¶ 57).  Count III – Trademark Infringement Against All Defendants  – alleges Defendants continue to use the marks in conjunction with Compass in an unauthorized and illicit manner in

CASE NO.  09-60713-CIV-ALTONAGA/Brown

violation of Anago's trademark rights.  (*See id.* ¶ 62).  Count IV  – Unfair Competition Against All

Defendants  – states a claim of unfair competition as a result of Defendants' continued inclusion of

Anago in advertising, including the re-direction of URLs containing the mark Anago to Compass,

which produces confusion in the public mind.  (*See id.* ¶ 71).  Count V  – Reverse Palming-Off

Against All Defendants  – alleges Defendants have obliterated the mark from the operation of what

is otherwise an Anago operation and are taking the goods and services of Anago and repackaging

them as the goods and services of Compass.  (*See id.* ¶¶ 81, 83).

> **B.    Plaintiff's Request for Preliminary Injunctive Relief**

Anago filed this suit in state court on April 15, 2009.  Following Defendants' removal of the

case, Defendants requested that the Court order the parties to mediate the case (while staying it)

under section 13.1 of the SRA.  In opposition to the requested stay, Anago stated "Plaintiff has

maintained in its communications with Defendants' counsel that it seeks to enjoin the continued

breaches, infringement, and destruction of its franchise system by Defendants even though it will

participate in non-binding mediation." (Motion [sic] in Opposition to Motion to Stay [D.E. 6], 2-3).

At a May 27, 2009 hearing on Defendants' motion to stay proceedings pending mediation, the Court

suggested Anago file a motion for injunctive relief.  Anago filed its first Motion for Preliminary

Injunction [D.E. 21] on June 9, 2009, and an evidentiary hearing was conducted on July 15, 2009.

Anago's first request for an injunction was denied (*see* Order [D.E. 53]) on July 15, because Anago

had failed to demonstrate a substantial likelihood of prevailing on the merits of its breach of contract

claim, given that its initial complaint alleged Anago terminated the SRA after giving notice under

section 8.4, which requires that CHMI be provided with 30 days to cure its breach, and yet Anago

8

CASE NO.  09-60713-CIV-ALTONAGA/Brown

did *not* give CHMI the required 30 days to cure.

The Amended Complaint was thereafter filed on August 21, 2009, changing the basis of Anago's notice of termination from section 8.4 (opportunity to cure) to section 8.3 (no opportunity to cure) of the SRA.   The present Renewed Motion was then filed September 14, 2009, and the Renewed Motion, as well as the evidence presented, focus primarily on the claimed breach of contract by Defendants.  In addition to the evidence received at the July 15 hearing on the first Motion for Preliminary Injunction, the Court has received evidence on three separate dates, October 20, October 30, and November 10.  The following is a summary of the Court's factual findings.[2]

Terry Mollica ("Mollica"), President of Anago, testified it took Anago about seven years to develop the package that it offered for sale nationwide; he considers the information developed a trade secret of Anago.  Anago has developed some cleaning methods it does not see other people use, and has developed its own method of running a master business through proprietary software and customized canned software.  Mr. Mollica claims all of this is confidential information.

He remembers entering into a contract with CHMI in 2004, and providing Defendants with appropriate financial disclosure documents referred to as the UFOC (Uniform Franchise Offering Circular) via FedEx that Defendants signed for.  From 2004 to 2007, Defendants sold 44 franchises. After Anago's franchise trainer, Carlos Calderon, visited with Defendants for several weeks in late 2007, in 2008 CHMI sold 29 franchises, showing a marked improvement in sales.

Mr. Mollica remembers that in mid-January 2009, Defendants stopped putting all of their client receipts into the escrow account required by the SRA.  After verbal directives from Anago's

---

[2] No citations to the record are included as the parties have access to the transcript and exhibits.

CASE NO.  09-60713-CIV-ALTONAGA/Brown

representative, Marina Gordon, were ignored, Mr. Mollica sent Defendants several emails telling them to resume depositing into the escrow account.  He remembers receiving a letter from Defendants' counsel dated February 2, 2009, advising Anago of "certain defaults under the Agreement."  According to Mr. Mollica, Defendants simply did not like the billing and collection system, they did not like the way they had been trained – *or not trained* some five years before, they did not like Citrix upgrades, they did not like the banking, and they complained of overcharges by Anago.  CHMI further advised its accounting firm was unable to perform an audit for the year ended December 31, 2007 because of the accounting processes used by Anago. The letter advised Anago that CHMI planned to do the following: contact its franchisees and clients and direct them to make payments directly to CHMI, open a new checking account into which payments would be deposited, and provide Anago with information about the funds maintained in the new account.

Anago's response, in a letter written by its counsel dated February 12, 2009, was to refute Defendants' complaints, advise CHMI of CHMI's breaches of the SRA, demand performance by CHMI as required by the SRA, including CHMI's obligation to have audited financials[3] and make deposits into the escrow account, and return to Defendants $960.00 overbilled by Anago for license fees.  The February 12 letter was the first indication by Anago to CHMI that CHMI was defaulting under the SRA, although Mr. Mollica had sent several emails complaining of CHMI's failure to deposit funds into the escrow account and demanding that it do so.  Mr. Mollica found it odd that CHMI could not perform audited financials when Anago had 30 other "cities" that had no similar

---

[3] According to Mr. Mollica, the FTC requires that three years' worth of audited financial statements be provided to a prospective unit franchise buyer in an UFOC.

10

CASE NO.  09-60713-CIV-ALTONAGA/Brown

problem.

CHMI's lawyers responded to Anago with a letter dated March 3, 2009, in which CHMI outlined changes it wanted to resolve the issues it had raised in its earlier correspondence.  CHMI demanded the escrow account be closed and customer receipts flow through CHMI's account, "as is normal in franchise relationships," and that the Note be cancelled, among other requested changes. Everything CHMI stated it wanted to stop doing, it stopped.  By correspondence dated March 5, 2009, Anago, through its counsel, did two things: (1) it advised the Derryberrys they were in default under the Note and Anago was accelerating the maturity of the Note due to CHMI's events of default, which were outlined as consisting of violations of sections 2.4(a) (billing and collection), 2.4(b) (deposit of client receipts), 3.2(a) (reports to franchisor), 3.4(c) (insurance), 4.2 (ongoing compensation to franchisor), and 5.4 (infringement by subfranchisor); and (2) it responded to CHMI's March 3, 2009 requested changes by demanding that CHMI comply with the SRA.

Lawyers' letters continued thereafter.  On March 19, 2009, CHMI's counsel wrote to Anago, disputing the claimed breaches of the SRA by CHMI and enclosing a check for $8,000.00 to bring the Note current.  Pursuant to that letter, CHMI also attempted to submit the parties' dispute to non-binding mediation.  Anago's response, dated March 20, 2009, adopted the events of default as contained in Anago's March 5 letter, and for the first time invoked section 8.3 of the SRA (termination without opportunity to cure), indicating Anago, through CCFH, Inc. d/b/a Anago of Phoenix, would immediately assume and commence operation of the Phoenix Subfranchise. CHMI's counsel responded with a letter dated March 23, 2009, agreeing the SRA and the relationship between CHMI and Anago had been terminated.

CASE NO.  09-60713-CIV-ALTONAGA/Brown

Since Anago terminated the SRA on March 5, Mr. Mollica believes CHMI has taken the Anago name and plagiarized it by linking Compass Cleaning with Anago.  Letters have been given to unit franchisees advising them CHMI is now Compass but will continue to operate like Anago. Anago is attempting to compete in Phoenix now; it has an Arizona corporation and an office.  The clients who were with CHMI indicated they are staying with Compass, and have done so.

According to Mr. Mollica, CHMI's refusal to deposit money into the escrow account, a requirement of the SRA, is a major default.  The NBDS system creates the invoice and gives Anago a way to track it; without an escrow account, Anago cannot track the receipts. It will not know who paid and when they paid.  There would be no way to guard the master as well as the unit franchisee when they did not get paid.  In other words, one cannot run an Anago  master franchise without running the NBDS system.  In this case, on at least 53 or 54 occasions, Anago made extra transfers to help CHMI with its cash flow.  No other party has ever advised Anago that use of the NBDS system is a breach of the SRA, as CHMI has done here.

Mr. Mollica believes CHMI's failure to have audited financial statements constitutes a violation of section 8.3(b) of the SRA, as it is a violation of the FTC rule.  Nevertheless, the primary reason Anago had for defaulting CHMI was CHMI's unwillingness to comply with the SRA – its failure to deposit money into the escrow account and failure to use the software.  The post-term obligations of CHMI under the SRA are to cease operating as Anago, turn over books and records, turn over clients, turn over franchisees  – turn over everything and leave, a requirement CHMI has breached.  Furthermore, for 24 months following termination, CHMI is prohibited from engaging in the business, and it has violated that as well by operating as Compass with its pre-existing clients

12

CASE NO.  09-60713-CIV-ALTONAGA/Brown

and pre-existing system.  CHMI is operating a franchise system outside the Anago franchise.

Mr. Mollica does not see any problem with his termination of CHMI on March 5 and his directive that it cease using the Anago trademarks, notwithstanding CHMI's obligations under its separate contracts with unit franchisees.  According to Mr. Mollica, Anago now has documents available to sell new unit franchises in Arizona.

Anago is seeking an injunction prohibiting CHMI from operating in Arizona and within a five-mile band outside that state's borders, because such obligation is contained in the SRA post-term covenants.  According to David Povlitz, director of Anago Franchising and chairman of Anago Cleaning Systems, Anago will be irreparably harmed if injunctive relief is not granted because other masters will follow suit, believing there is no value to the national franchise and the national franchisor did nothing to protect the system for all of the master and unit franchises.  Anago is trying to grow, and the only way the value of the existing master franchises can increase is if the number of master franchises increases.

Cynthia Voytoila began working with CHMI on December 2, 2008.  Although informally a company named Compass was talked about, formally the Compass name came up in March 2009. Voytoila was terminated by Compass on October 12, 2009.  As early as January 5, 2009, Ms. Voytoila had received from Defendants the Compass Cleaning Solutions Policies and Procedures. At some point in March, Defendants convened an emergency meeting and advised their employees they were no longer going to be Anago.  All items with the word Anago were removed and within a week, the CCS logo was put up in the office.  A few weeks later, in another meeting, the franchise owners were advised the company name had been changed, and they were required to sign new

13

CASE NO.  09-60713-CIV-ALTONAGA/Brown

agreements with Compass.  Any owners who refused to convert to Compass had their locks changed.

Some "customer" letters of recommendation, written by Defendants' director of sales, show the

existence of Compass as early as October 2008.

Cheri Derryberry was the only Defendant to testify.  According to Ms. Derryberry, she and

her husband, Mike Derryberry, decided in 2004 to purchase a franchise.  In June 2004, the

Derryberrys signed the SRA, but they were never been provided with updated offering circulars

which included 2003 financial statements for Anago.  In advance of their signing the SRA,

Defendants also were not provided with a sample unit franchise agreement or sample promissory

note.

Anago did not provide Defendants with training relating to cleaning; abbreviated training was

provided when Defendants set up their Phoenix office.  Mr. Povlitz told Defendants Anago was a

sales and marketing company; Defendants did not have to worry about cleaning.  Anago's "cleaning

system" was publicly available from a vendor's brochure.  While section 2.3 of the SRA addresses

pre-opening assistance and support, Anago did not give any such support to Defendants.  Section

2.5(c) of the SRA addresses periodic assistance, but Anago did not furnish any even though

Defendants "begged for help."  Section 2.5(e) deals with research and development by Anago; none

was provided.  While section 2.6 requires Anago to supply the subfranchisor with current UFOCs,

Anago never made Defendants aware that its business had been audited by an accountant who lacked

proper licensing in Florida.

In January 2009, some five years after contracting with Anago, Defendants' accountant, Mary

Thomas Keim, sent the Derryberrys a letter explaining that in connection with the accountant's audit

14

CASE NO.  09-60713-CIV-ALTONAGA/Brown

of CHMI's financial statements for the year ended December 2007, the accountant had become aware of the lack of reconciliation of the operation of the escrow account to the revenue billed in the NBDS system, and this constituted a material weakness in the internal control over financial reporting.  Specifically, in preparing the 2007 audit, Ms. Keim became aware that CHMI did not have appropriate controls over the escrow account, and that the reconciliation to the invoices in the NBDS system was less than satisfactory; moneys went into the escrow account, but when the payments flowed out of the account to CHMI, there was no reconciliation of which invoices were being paid.  Contrary to CHMI's claim that it was unable to produce an audited financial statement as stated in its lawyer's letter of February 2, 2009, CHMI did prepare a 2007 audited financial statement, but Ms. Keim included a disclaimer with the statement.  As to each of the franchises sold by Defendants, the franchisees were given Ms. Keim's disclaimer along with the audited financial statements.

According to Ms. Derryberry, the issue with the escrow account was the "straw that broke the camel's back" for Defendants.  Defendants constantly had to beg Anago for money; Defendants would deposit money into the escrow account following the procedures, but money was then inconsistently transferred into Defendants' operating account on the basis of an unknown formula, and Defendants were never informed as to how to reconcile the escrow account.  Defendants were never able to determine what charges Anago had assessed to the escrow account to then reconcile the account with Defendants' own records.  This "problem" is peculiar to CHMI as no other Anago subfranchisors seem to have had this problem.

Ms. Derryberry authorized her attorney to send Anago the "breach letter" of February 2,

CASE NO.  09-60713-CIV-ALTONAGA/Brown

2009, mostly as a result of being ignored by Anago and because of the problems of reconciling the balance in the escrow account.  Curiously, this reconciliation problem, which according to Ms. Derryberry plagued CHMI for years, is not well documented, and only appears as an issue immediately prior to CHMI's attempted termination of the SRA and related demands.  In the letter, the attorney referenced section 8.1 of the SRA , which allowed CHMI to notify Anago of Anago's default and to give Anago the opportunity to cure its default.  Rather than cure its defaults, Anago responded with its lawyer's letter of February 12.

As stated, by letter dated March 5, 2009, Anago terminated CHMI's rights under the SRA. Anago's termination of CHMI was announced pursuant to section 8.3 of the SRA, but Anago never gave CHMI notice prior to termination that CHMI had committed any 8.3 violations.  CHMI in turn had its lawyer send a letter to Anago purporting to terminate the SRA under section 8.1.  When CHMI's relationship with Anago ended, Ms. Derryberry believed she still had to abide by her contracts with the sub-franchisees and clients, contracts Anago was not a party to.   And although section 2.4 of the SRA requires CHMI to deposit money into an escrow account, Ms. Derryberry does not believe Defendants are violating that requirement by putting the money into a different account, because the escrow account was irreconcilable and Anago provided CHMI no assistance in reconciling the amounts.

According to Ms. Derryberry, in March 2009 CHMI ceased using the Anago name and switched to Compass Cleaning Solutions.  Compass does not represent itself to be affiliated with Anago in any way.  If Compass were enjoined from operating, its employees (10) would be out of business, 75 unit franchisees would lose their income, and customers would be left without service.

16

CASE NO.  09-60713-CIV-ALTONAGA/Brown

Ms. Keim projected what the loss to the Defendants would be if an injunction were entered and came up with the figure of $2.5 million.

In November 2008, after the "Utah" lawsuit, Ms. Derryberry participated in a conference call with several master owners wherein she indicated being fearful that CHMI might be in default.  Ms. Derryberry was concerned that if Anago could default one "city" for not selling franchises, i.e., "Utah," it could similarly default many cities.  At that time Defendants were aware of all of the concerns they later included in the February 2009 letter to Anago.

According to accountant Sol Lipson, he has been doing the accounting work for Anago for some 15 years, and he has never had any issues arise regarding transfers of money from the escrow accounts.  He does not recall any auditors ever seeing the escrow account as an issue or asking questions about it.  Neither he nor his firm was ever contacted by Defendants' auditors regarding any issues with the escrow account.

Marina Gordon is employed by Anago and is responsible for the bank accounts of the master franchisees.  In email correspondence dated May 16, 2008, she communicated that "if [Defendants] see a balance in your escrow account after your weekly transfer, the balance reflects the retained accrued royalty and minimum balance required balances."  The minimum balance retained in the account, however, is a number she calculates in her head; she uses no precise mathematical formula.

## II.  DISCUSSION

To be entitled to a preliminary injunction under Rule 65(a), Federal Rules of Civil Procedure, Anago, as the moving party, must demonstrate: (1) a substantial likelihood of success on the merits; (2) it will suffer irreparable injury unless the injunction issues; (3) its threatened injury outweighs

17

CASE NO.  09-60713-CIV-ALTONAGA/Brown

whatever damage the proposed injunction may cause the Defendants; and (4) if issued, the injunction will not be adverse to the public interest. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)).  "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." (*Id.*) (internal citations and quotations omitted).  And where the injunction sought would require altering the status quo, the movant "bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citation omitted).

The foregoing summary of the facts presented at the several days of hearing supports a finding that Anago satisfies the first element, that is, it has shown a substantial likelihood of prevailing on the merits of its breach of contract claim.  Defendants' several communications near the end of the parties' relationship appear pretextual; they are efforts to conjure up defaults by Anago to enable CHMI to terminate the SRA after Defendants had already begun operations as Compass. The controversy concerning the difficulty Defendants had in reconciling the escrow account, Anago's failure several years before to provide training to CHMI and give CHMI documents that should have been exchanged at the inception of the parties' contractual relationship (which the Court finds were indeed provided by Anago), were all raised in an effort by Defendants to extract themselves of their contractual obligations and move on with Compass.  It is clear that in this relationship, CHMI derived little benefit or services from Anago, while Defendants pretty much

18

CASE NO.  09-60713-CIV-ALTONAGA/Brown

single-handedly put together their operation, learning the necessary marketing and sales techniques, and commercial cleaning methods with little help from Anago.  Defendants clearly wanted out, but could not identify a singular breach by Anago of any of the material terms of the SRA.  The Utah lawsuit does appear to have motivated Defendants in their efforts to terminate the SRA.  Thus, without the need for further discussion, on the first element, Anago has shown a strong likelihood of succeeding on the merits of the breach of contract claim, the only claim addressed by the evidence presented.

Nevertheless, Anago must clearly meet its burden of persuasion as to each of the four elements necessary for issuance of a preliminary injunction, and its failure to satisfy one is fatal to its request for this extraordinary remedy.  Consequently, the Court addresses the second and third elements, only, as it finds Anago does not satisfy these.

**A.**    **Anago Does Not Show It Will Suffer Irreparable Injury.**

"A showing of irreparable injury is the 'sine qua non of injunctive relief.'" *Siegel*, 234 F.3d at 1176 (quoting *Northeastern Fla. Chapter of the Assn's of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir. 1978)).   The claimed irreparable injury "'must be neither remote nor speculative, but actual and imminent.'" *Id.*  (quoting *City of Jacksonville*, 896 F.2d at 1285) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989)).  "To show irreparable harm, a movant must show that the injury 'cannot be undone through monetary remedies.'" *Curves Intern., Inc. v. Mosbarger*, 525 F. Supp. 2d 1310, 1314 (M.D. Ala. 2007) (finding lack of irreparable harm where Curves International had not lost customers as a result of the existence of the competing gym, nor

CASE NO.  09-60713-CIV-ALTONAGA/Brown

was there any evidence that anyone was confused, or was likely to confuse, the competing gym with

a Curves franchise) (quoting *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir.

1991) (quoting *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983)).  And while "economic losses

alone do not justify a preliminary injunction, 'the loss of customers and goodwill is an irreparable

injury.'" *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964,

970 (11th Cir. 2005) (no abuse of discretion in district court's finding that BellSouth was losing

about 3,200 customers per week under previous regulatory regime).

Initially, the Court observes that section 13.2 of the SRA provides that upon a breach of the

SRA, the franchisor (Anago) is entitled to an injunction without showing or proving any actual

damage.  Such a contract provision, however, "is not alone dispositive of the issue of irreparable

harm, and does not insulate a plaintiff seeking a preliminary injunction from the need to prove that

it will suffer imminent irreparable injury as a result of the [defendant's] conduct." *Boston Laser, Inc.

v. Qinxin Zu*, No. 3:07-CV-0791, 2007 WL 2973663, at *12 (N.D.N.Y. Sept. 21, 2007) (alteration

added) (citations omitted).  Thus, notwithstanding the existence of section 13.2, the Court "must

engage in the usual case-by-case analysis to determine whether [movant] confronts imminent

irreparable harm warranting the issuance of a preliminary injunction . . . ."  (alteration added).

Anago asserts there are at least four "specific" ways Defendants' continued operation of a

competing business in their former territory in violation of the SRA's non-competition covenant will

irreparably harm Anago.  (*See Renewed Mot.* at 12).  Specifically, Anago asserts that enforcement

of the non-competition covenant is essential to allow time for the public's association of Defendants'

business with Anago to dissipate.  (*See id.*).  Second, without enforcement of the non-compete,

20

CASE NO.  09-60713-CIV-ALTONAGA/Brown

Anago will be unable to re-enter the "Former Territory" serviced by Defendants, causing Anago to lose sales, goodwill, and market presence in the Former Territory.  (*See id.* at 12-13).  Third, Anago is being harmed by Defendants' use of Anago's trade secrets and the Anago system, including confidential information Defendants received from Anago.  (*See id.* at 13-14).  Lastly, if Defendants' conduct is not enjoined, it will threaten the Anago franchise system as a whole.  (*See id.* at 14).  The Court addresses each claimed injury.

As to the first, concerning the need for the public's association of Defendants' business with Anago to dissipate, Defendants' association with Anago ceased as of March 2009, when the SRA was terminated.  Even before the termination, Defendants had not been using any part of the Anago system; CHMI had earlier de-identified its Phoenix office and stopped using materials that referred to Anago.  Defendants have indicated no intention of using any of the Anago marks.  *Cf. McDonald's Corp.*, 147 F.3d at 1310 ("McDonald's faces damage to its own reputation and loss of customers caused by the Robertsons' distribution of an allegedly inferior (and possibly dangerous) product held out to be McDonald's.  Customers would believe that they were eating McDonald's sanctioned products when they consumed improperly cooked and unsanitarily maintained food products from the Robertsons' store.  We can conceive of no realistic way to determine the damages under these circumstances.").

No evidence was presented that the Anago System possesses any goodwill or market presence in Arizona that Defendants are harming by their operation of Compass.  While Anago is apparently attempting to compete in Phoenix now, and has an Arizona corporation and an office, the efforts at setting up in the "Former Territory" appear quite preliminary, and no evidence was

21

CASE NO.  09-60713-CIV-ALTONAGA/Brown

presented concerning how the continued operations of Compass and the servicing of its unit franchisees and customers under contracts to which Anago is not a party are affecting Anago's efforts at doing business in the Former Territory.  It is altogether unclear to what extent the public's association of Defendants' business with Anago, of which no evidence was presented, has or has not dissipated since Defendants stopped using any reference to Anago.

As to the second, as Defendants state in their opposition, Anago has not been in business in Phoenix nor has it sold unit franchises or subfranchises in Phoenix.  No evidence was presented of Plaintiff's market presence or the impact on such presence from the Compass operation.  The nature of the Anago business is the provision of services, a function that can be accomplished even remotely from any location.  Mr. Mollica conceded there was nothing preventing Anago from competing with Defendants in Arizona; indeed, Anago has begun to take steps to do so.  In short, the Court heard very little evidence concerning the nature or measure of the Anago goodwill in the Former Territory.

Concerning the third basis of alleged harm, no evidence was presented that Defendants have used the Anago system or trade dress or secrets (and it is unclear what secrets were acquired during the relationship concerning marketing, or commercial cleaning techniques) since March 2009.  Because Anago has not shown what legally protected trade secrets are being misappropriated by Defendants, this argument fails to persuade.

As to the fourth basis of alleged harm, that the entire Anago system will be harmed if Defendants are not enjoined, the sort of nebulous argument that other master franchisors are waiting to see what happens in this case does not rise to the level of irreparable harm when the wait and

CASE NO.  09-60713-CIV-ALTONAGA/Brown

uncertainty will be over as of April 2010, following trial.  It is unclear how the absence of a four-month preliminary injunction threatens the Anago system as a whole, a system which has been operating for many years and certainly throughout the existence of this case, which was filed in April 2009.

This last point is related to a concern that pervades the renewed request for a preliminary injunction.  And that is, Anago has not been diligent in seeking the extraordinary remedy of an injunction.  As stated, Anago filed suit in April 2009, and Count II of its initial complaint sought injunctive relief.  But it did not seek a temporary restraining order or preliminary injunction at that time.

After removal of the case on May 14, 2009, it was Defendants who sought a stay of proceedings pending mediation [D.E. 4] on the basis that the SRA requires the parties to mediate disputes.  At a May 27 hearing on that motion, the undersigned denied the motion but suggested to Anago that if its complaint sought injunctive relief, it should perhaps file a motion for the same.  By Order dated May 28, 2009, Anago was given until June 15, 2009 to file its motion for preliminary injunction.  Anago filed the first Motion for Preliminary Injunction on June 9, 2009 [D.E. 21], and following a hearing, on July 17, 2009 the first Motion was denied [D.E. 53] for reasons explained to Anago.  The present Renewed Motion was not filed until September 14, 2009.

"'A district court should generally consider delay in assessing irreparable harm.'" *M&G Electronics Sales Corp. v. Sony Kabushiki Kaisha*, 250 F. Supp. 2d 91, 105 (E.D.N.Y. 2003) (quoting *Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995)).  Thus, "[a]bsent a good explanation, . . . a substantial period of delay . . . militates against the

23

CASE NO.  09-60713-CIV-ALTONAGA/Brown

issuance of a preliminary injunction by demonstrating that there is not apparent urgency to the request for injunctive relief." *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995).  *See also Pippin v. Playboy Enter. Group Inc.*, No. 8:02CV2329T30EAJ, 2003 WL 21981990, at * 2 (M.D. Fla. July 1, 2003) ("Delay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage (either a commercial or litigation advantage) than protecting a party from irreparable harm.").  In *M&G Electronics*, for example, it was appropriate for the court to consider that the movant had waited three months after filing suit to file its motion for preliminary injunction, withdrew the motion and then refiled it some three months later.  250 F. Supp. 2d at 106.

Here, while Anago filed its suit seeking the equitable remedy of an injunction, it was only after the Court directed it to do so that it filed its first motion some two months after the lawsuit was filed.  Thereafter, Anago again waited two months after its first motion for a preliminary injunction was denied to file the present Motion.  For harm to be irreparable, it has to be "actual and imminent." *Siegel*, 234 F.3d at 1176 (citations omitted).  While Anago's two instances of delay in seeking an injunction separately do not amount to "too much delay," combined, they indicate the absence of actual and imminent harm.

"An alleged breach of a non-competition clause does not automatically create an inference of irreparable harm." *Athlete's Foot Brands, LLC v. Whoooahh, Inc.*, No. 07-333-S-EJL, 2007 WL 2934871, at *4 (D. Idaho October 5, 2007) (citation omitted).  An inference of irreparable harm is at best what Anago has shown.  It has not shown that it will be unable to quantify its damages flowing from Defendants' breach of their agreements (the SRA and the Note).  Consequently, Anago

24

CASE NO.  09-60713-CIV-ALTONAGA/Brown

does not satisfy its burden of demonstrating irreparable harm.  *See, e.g., Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *Cate*, 707 F.2d at 1189 (11th Cir. 1983) ("An injury is "irreparable" only if it cannot be undone through monetary remedies.").

**B.      Injury to Anago Does Not Outweigh the Harm an Injunction Can Cause Defendants.**

The structure set up by the SRA results in Anago having a contractual relationship with its master franchisor, CHMI, but not having any contractual relationship with the unit franchisees, who only contracted with CHMI.  CHMI possesses direct responsibility for its unit franchisees and customers, and Anago's termination of the SRA does not relieve CHMI of its obligations to its unit franchisees and customers.  Indeed, section 9.4(a) of the SRA contemplates that CHMI has a two year contractual obligation post-termination to service its unit franchisees who have no relationship to Anago.  Anago has no ownership, control or responsibility over CHMI's unit franchisees.

Anago has not adequately answered the question of how the Court will make provision for the continued servicing of 70 or so unit franchisees if Defendants are prohibited from operating in the Former Territory while the suit is litigated.  Anago has not adequately answered the question of how the customers will be provided for if Defendants are enjoined, as Anago does not presently appear to have viable operations in Arizona.  In addition to the harm to the unit franchisees, Defendants have presented evidence through their accountant of the estimated damage they will suffer should an injunction be entered.  Defendants invested their life savings into the business, have three family members working in the business, and employ 10 persons.

25

CASE NO.  09-60713-CIV-ALTONAGA/Brown

In *Athlete's Foot*, the court noted the movant was not operating a business within the pertinent three mile radius, while defendants had an on-going business where they had signed a multiple year lease. 2007 WL 2934871, at * 4.  To enjoin defendants would cause a greater hardship to defendants as contrasted with the "little hardship" plaintiff would suffer if the defendants' store remained open during the pendency of the litigation.  *Id.*   While at least one court has rejected the analysis in *Athlete's Foot* as a minority position that gives "short shrift to the particular dynamics of the franchising relationship," *Bad Ass Coffee Co. of Hawaii, Inc. v. JH Nterprises, L.L.C.*, 636 F. Supp. 2d 1237, 1250 (D. Utah 2009), the Court is mindful of the evidence received concerning the particular dynamics of the franchising relationship established by Anago.  The evidence is weak concerning Defendants' use of any confidential information acquired concerning commercial cleaning services during the parties' contractual relationship.  *Cf., Certif. Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 549 (6th Cir. 2007) ("Plaintiff has a reasonable competitive interest in preventing Defendants from using the confidential information they learned as Plaintiff's franchisee to gain a competitive advantage in the provision of restoration dry cleaning services.").  And while Anago claims the value of its master franchise agreements will be diminished and its business model threatened unless it can enforce the covenant not to compete in this case, "a denial of this preliminary injunction does not mean that [Anago] will be unable to enforce the covenant.   It simply means that [Anago] must seek to enforce it at a later stage of the legal proceedings. . . .   A denial . . . will not encourage other franchisees that they can abandon their franchise agreements as they may be held liable for doing so."  *Pirtek USA, LLC v. Zaetz*, 408 F. Supp. 2d 81, 86 (D. Conn. 2005) (alterations added).

CASE NO.  09-60713-CIV-ALTONAGA/Brown

The injunction Anago seeks "would alter rather than preserve the status quo."  *Dunkin'*

*Donuts Inc. v. Nat'l Donut Restaurants of New York, Inc.*, 291 F. Supp. 2d 149, 151 (E.D.N.Y.

2003).  It would do so under circumstances where there is presently no proposal in place to provide

continuous and uninterrupted service to many unit franchisees and their customers.  Because (1)

Anago is capable of quantifying its damages (the loss of earnings during the period following the

termination of the SRA); (2) a denial of the Renewed Motion only means Anago will have to wait

four more months for the entry of permanent injunctive relief if it prevails; and (3) the loss to

Defendants, the 70 or so unit franchisees and their customers is quite large, as quantified by

Defendants' accountant, on this factor Anago also fails in its burden.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Renewed Motion for Preliminary Injunction

**[D.E. 67]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of December, 2009.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

27